The next case on the calendar is Giantu v. Dingham. Good morning, your honors. I'm Frank Vealey. I represent the plaintiffs' appellants. This is an appeal from a dismissal of a stock fraud action under Section 10B of the Exchange Act. And the central question, in fact, the only question is, was this a domestic transaction within the rule of absolute activist? The district court held that it was not, and finding no stock fraud claim dismissed for lack of subject matter jurisdiction the entire case. The facts insofar as they're relevant to this appeal are pretty simple. The plaintiff and the defendant are both Americans, met in a series of meetings in New York City where the defendant solicited the plaintiff's investment in a hospitality venture in the Bahamas. In those discussions, the defendant misrepresented the profitability and the capitalization of the venture. The defendant offered the plaintiff an equity position in the investment. The plaintiff accepts. The plaintiff then wired $250,000 from his New York account to the defendant. And the defendant emailed to the plaintiff in New York saying, you've got 20% of the equity. Another important point, of course, here is there was a condition precedent to the actual performance of this agreement. And that is that there had to be, before the shares could be delivered, Bahamian authorities had to approve the transaction. But before the approval could be sought or any further purchases could be made, which were contemplated, or actual delivery of the Bahamian approval, the venture collapsed. The defendant absconded with the money, and here we are. The rule of absolute activists is pretty simple insofar as it deals with this kind of a transaction. A transaction in securities is domestic if either the buyer or the seller becomes irrevocably committed to the transaction in the United States. The district court said that neither party became irrevocably committed to this transaction because of the condition precedent. This would have to have been done in the Bahamas. Our contention is the district court confounded, got wrong the issue here, in that the district court was saying that actual performance of the contract could not be had. Whereas the issue here is, did they commit to perform the contract? There was no doubt that where the plaintiff had paid for the securities, 2 times 10%, plaintiff had paid for the securities. If the Bahamian authorities had approved the transaction, there could be no doubt, a condition that was not within the control of either of the parties. There was no doubt that, it seems to me, that the defendant would be committed to issue the securities. I may have mistracked your question, but unless the Bahamian authorities approve, the defendant does not have to. If the Bahamian authorities did approve. Absolutely, he had to give it. The defendant would be committed irrevocably. At the time that the plaintiff paid the money for 10% and then another $150,000 for a second 10%. The defendant would be committed to issue the securities if the authority was obtained. Absolutely, our position is- It's rather common in securities transactions to have some kind of condition preceding, such as an attorney's letter saying that it's in accordance with law or something like that. Absolutely, that is our position. Our position is- What would have happened if the Bahamian authorities did not approve?  But our position is- And what then? The money would have been- Money would have been- An obligation to return the money? Absolutely, absolutely. That's the way it can- Our position is that there was enough for a domestic purchase for absolute activist purposes because there was a contract. If the condition had been fulfilled, the parties had to go forward with the contract. Exactly so. Our position is that the parties, in fact, were committed. But one of the parties or both parties might have been excused if something happened. Well, not only was the plaintiff committed, the plaintiff had already performed. Absolutely, that is our position. I think I can pass on to the next point, then, if the court is clear on this and there are no further questions. The second is the issue of conflict of laws. The district court also held, or alternatively held, that even if this were a domestic securities transaction, section 10B should not apply on the rule of Park Central. Park Central case, as the court, I'm sure, will recognize, presented unusual facts and an unusual situation. It was a synthetic security, basically a wager between the plaintiff and none of the defendants. Just the plaintiff and another party were wagering whether Volkswagen stock would go up or down on a German exchange. And the defendant, Porsche, basically, and Porsche actors, had allegedly said false things in Germany, which made the price of Volkswagen stock rise. And the court, quite understandably, said, this stands Morrison on its head. But how can this be if there's a transaction in the United States? In a synthetic security, people are betting on what's going to happen on another exchange. Everybody in the world who commits a stock fraud anywhere in the world is going to be hailed into a US court. If US parties, not the defendant, but US parties, bet on it. Well, that can't be the case. And it would have subjected Porsche to very unfair treatment because it was under investigation in Germany. And it was being sued in the United States, the possibility of inconsistent regulation. Here, nobody has even suggested what the conflict of law might be. If the Bahamian authorities say you can't do this, the contract excuses the defendant. So he's never caught in a rock and a hard place between Bahamian law and US law. And here we have alleged misrepresentations in New York, contract entered into in New York. Yes, Your Honor. And just a condition of registration that has to take place in the Bahamas. So it doesn't seem analogous to the Park Central case. The final point made by the defendant is that there's no contract at all. And I think as the court has perceived, what we have here is complete performance of part of the contract. And under New York law, that is a binding commitment. Well, complete performance of two contracts, there were three contracts. There was a contract to buy 10% for $100,000, which was fully performed by the plaintiff. There was a contract to buy another 10% for $150,000 that was completely performed by the plaintiff. Then there was a contract to buy 50% interest with the price not being disclosed. The price not being, and that contract probably was an unenforceable contract since it had no price. But whether there was a third contract that wasn't really a contract is irrelevant to the first two. Conceded. Walter. How do you address the effect of the, and help me understand it's role in the record, the representation that we will not go forward if we cannot reduce all this to a writing? That might have been a condition precedent to the formation of the contract. But it was either waived or the condition just never occurred because the parties obviously went forward and performed. They sent the money and sent the confirmation. I don't think I'm going to have to reserve any time. Thank you very much. Well, let me just ask another question. The condition that Judge Livingston just asked you about, that was set forth in what manner? It's all oral.  It was orally. Orally. It was orally. But we are obligated to construe the complaint in the manner most favorable to the plaintiff. And whether that was a part of the contract or whether it was an inducement, like for example, the allegations in the contract, you'll get back your money if you're not absolutely satisfied. The defendant argues that that means it's not a definitive contract. But that construed in the like most favorable to the plaintiff is an inducement to get the plaintiff to pay up the money to buy 10, 20% of the securities. Yes, Your Honor. And could the same thing be said of the provision that Judge Livingston was asking about? Yes, it could. Thank you very much. Thank you. We'll take it under submission.